UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                       CASE NO. 14-20814
                                          HON. VICTORIA A. ROBERTS

v.

STEVEN DUANE SMITH,

       Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorneys, United States Attorney Barbara L. McQuade and Assistant United States Attorney Sara D. Woodward, respectfully submits this sentencing memorandum. For the reasons stated below, the government recommends a sentence of 151 months' imprisonment.

**I.    PROCEDURAL HISTORY**

On August 11, 2015, Defendant entered a guilty plea to Count One of the Indictment, which charged distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2). In the Rule 11 Plea Agreement, the parties anticipated a sentencing guideline range of 151 to 188 months, based on a total offense level of

34 and a criminal history category I. The Probation Department has calculated the same guideline range. (PSR ¶ 60.)

## II.   STATEMENT OF FACTS

### A.   *Ares Peer to Peer Investigation*[1]

On three occasions in February and May 2014, an undercover Homeland Security agent observed that Defendant was sharing child pornography with others online. (PSR ¶ 9.) Defendant's username on Ares, a peer-to-peer program, was "the Punisher." The IP address Defendant used to access the internet was traced to his home in Wolverine Lake. (PSR ¶ 10.)

### B.   *Search Warrant*

On October 16, 2014, a federal search warrant for Defendant's home was executed. (PSR ¶¶ 10-11.) Defendant, his wife, his minor son and his adult son, Steven Deven-Michael Smith (Michael), were present during the execution of the warrant. The Ares peer-to-peer program was running on the family desktop computer at the time of the search. (PSR ¶ 11.)

---

[1] Peer-to-peer networks are software programs, generally available for download from the internet, that allow other computer users to connect to one another via the internet and share media files. Data contained in the media files is exchanged directly between the Peer to Peer user as if they were directly attached. The data is not routed through a centralized server. When a P2P program is installed, the individual operating the program chooses what media files (music, images, videos, etc.) they want to share with other P2P users. P2P users may conduct a search for particular files related to their interests by typing in a keyword or phrase specific to the type of file they are looking for. The P2P program will search other connected P2P computers for those particular files and will make them available to the user for downloading.

Agents interviewed both father and adult son. PSR ¶¶ 12, 13. Defendant's son, Michael, told agents that he had been viewing child pornography for approximately ten years. Michael stated that he first viewed child pornography on Defendant's computer.[2] (PSR ¶ 12.)

Defendant also admitted that he had been downloading and viewing child pornography for many years. Originally Defendant said he had been viewing child pornography for ten years, but during a subsequent interview he admitted that he had been downloading child pornography for fifteen years. (PSR ¶¶ 14-15.) Defendant admitted that he was distributing child pornography through Ares, and that his username on Ares was "The Punisher." (PSR ¶ 14.) Defendant further stated that he had downloaded and deleted "a lot" of child pornography over the years. (PSR ¶ 14.) He estimated that he had downloaded approximately 5,000 videos of child pornography. (PSR ¶ 15.)

A desktop computer, two laptop computers and several external hard drives were seized from the home.

    C.    *Forensic Results*

---

[2] As the Court is aware, Steven Deven-Michael Smith was indicted for child pornography offenses and pled guilty to receipt of child pornography on June 4, 2015. (See Case No. 15-20815 (VAR), ECF No. 16.) On December 15, 2015, Steven Deven-Michael Smith was sentenced to 110 months and five years' supervised release.

A forensic examination of the electronic items seized from Defendant's home revealed over 1,150 images and 400 videos of child pornography. Both of the computers and two of the hard drives have large amounts of child pornography saved under Defendant's user name. The two remaining hard drives contain child pornography but do not contain user names. Based on the forensic examination, Defendant is responsible for downloading at least 678 images and 348 videos depicting child pornography. Some of these files Defendant downloaded date back to 2004.

Defendant's collection of child pornography mainly depicts sex acts between young, pre-pubescent children and adult males, including images of children being blindfolded while they are sexually abused, and a series of images of a toddler being anally penetrated by an adult. Many of the videos were several minutes in length and contained sound.

### III. SENTENCING FACTORS, TITLE 18 U.S.C. §3553

18 U.S.C. § 3553(a) provides the relevant objectives and factors to be considered by sentencing courts when determining a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation and rehabilitation); (3) the kinds of sentences legally available; (4)

the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution. The most relevant factors to Defendant's case are evaluated below.

  A. *The Advisory Guideline Range*

Despite being advisory, the Guidelines remain an important factor under section 3553(a) in fashioning an appropriate sentence. The Supreme Court has noted that, in formulating the Sentencing Guidelines, the U.S. Sentencing Commission's goal is to carry out the objectives of 18 U.S.C. § 3553(a). *United States v. Rita*, 551 U.S. 338, 345 (2007). The Presentence Report's offense level computation included a base offense of 22 for distribution of child pornography. PSR ¶ 24. Enhancements were applied for: prepubescent minors, *id.* ¶ 23; distribution through a peer-to-peer file sharing program; *id.* ¶ 24; sadistic material, *id.* ¶ 25; computer use, *id.* ¶ 26; and number of images, *id.* ¶ 30. Defendant has a Criminal History score of I. *Id.* ¶ 37. With acceptance of responsibility, his total offense level was 34, with a corresponding guideline range of 151-188. PSR ¶ 60. This is the starting point when fashioning a sentence for Defendant.

  B. *Nature and Circumstances of the Offense, and the History and Characteristics of the Offender*

An offender's pornography and erotica collection is the single best indicator of what he wants to do. KENNETH V. LANNING, OFFICE OF JUVENILE JUSTICE AND DELINQUENCY PREVENTION, CHILD MOLESTERS: A BEHAVIORAL ANALYSIS-FOR PROFESSIONALS INVESTIGATING THE SEXUAL EXPLOITATION OF CHILDREN, 107 (5TH ED. 2010). Defendant has been collecting child pornography for at least the past fifteen years. The videos and images Defendant collected are horrific. They are crime scene photos that memorialize the rape and assault of society's most innocent and vulnerable population. But this is what Defendant sought out and collected. This is the material that Defendant used to satisfy his sexual interests. This is what he, by his own admission, distributed into the larger stream of commerce for more than a decade. PSR ¶ 15.

Defendant's activities normalize the sexual exploitation of children and fuel a market, thereby leading to further production of images. The growing and thriving market for child pornography images is responsible for fresh child sexual abuse because the high demand for child pornography drives some individuals to sexually abuse children and some to "commission" the abuse for profit or status. In this way, child pornography collectors and distributors, like Defendant, are inextricably linked to child pornography producers. They are part of the same circle.

Not only did Defendant collect these images and use them for his own gratification but he sent them to others and encouraged those users to further peddle these vile images. As both a consumer and a distributor, Defendant unquestionably contributed to the child pornography market. The victims depicted in Defendant's collection are real children. Not only must these children deal with the physical, psychological, and emotional repercussions of their abuse, but they—unlike those children whose victimization was not memorialized on film—know that thousands of people watch, download, and trade in their suffering. The victim depicted in the "Lighthouse" child pornography series describes the fear she experiences knowing that pictures of her rape are being downloaded and pored over by strangers:

> I know that my image is being downloaded and watched by these kiddy porn perverts all across the country. I worry that they know who I am. I worry that they will come and look for me. I worry that they will come and hurt my family. I'm terrified that someone is stalking me. I have changed my appearance so they can't find me, but I still have panic attacks when I think someone is looking at me because they recognize me from the internet. I have difficulty working or being in public because of anxiety and want to hide somewhere safe.

Victim Impact Statement, "Lighthouse" Victim, previously provided to the Court, defense counsel, and the Probation Department. There is no question that the

images found on Defendant's computer— images showing the rape and sodomy of little boys and girls—depict young children suffering.

Defendant's impact on the market for child pornography, however, is not merely theoretical. Defendant's child pornography collection directly influenced his son to download child pornography. Not only is this concrete evidence of Defendant's influence on the market for child pornography, but Defendant has also contributed to the criminal behavior of his son. Defendant bears some responsibility for the fact that his son is serving a lengthy custodial sentence.

### C. *Seriousness of the Offense, Promotion of Respect for the Law and Just Punishment for the Offense*

As stated above, receiving and collecting child pornography is a serious offense. It is not simply a "consumer crime" without victims. The victims depicted in Defendant's collection are real children. Not only must these children deal with the physical, psychological, and emotional repercussions of their abuse, but they—unlike those children whose victimization was not memorialized on film—know that thousands of people watch, download, and trade in their suffering. Through his long-term collecting and P2P distribution of child pornography, Defendant not only sent these images into the stream of commerce to remain in perpetuity, he enabled and encouraged the sexual desires of unknown individuals who may be more dangerous than him.

Without question, the sharing of child pornography images and videos, even through P2P networks, reduces inhibitions and affirms the beliefs of some individuals that their sexual interest in children is normal. When child pornography materials are in the hands of someone with a sexual interest in children the potential for danger cannot be understated.

D.  *Adequate Deterrence and Protection of the Public*

The Sixth Circuit recognizes that "deterring future criminal behavior and protecting the public as sentencing factors in a child pornography case should be focused upon the market for such activities." *United States v. Robinson*, 669 F.3d 767, 777 (6th Cir. 2012). The *Robinson* court explained:

> Young children were raped in order to enable the production of the pornography that the Defendant both downloaded and uploaded . . . . The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading . . . child pornography, the greater the customer demand for it and so the more will be produced.

*Id*. (citing *United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007)). Defendant's conduct unquestionably contributed to the demand for child pornography images worldwide. Within the black market that Defendant collected and distributed images, the commodity is the children themselves. Even though Defendant didn't pay money for the images he collected, or charge

for images that he distributed over Ares, he unquestionably contributed to the market for these images.

A sentence at the low-end of the guideline range will serve as an adequate deterrent to others who engage in long-term trading and acquisition of child pornography. A significant sentence, five years of supervision and sex offender registration are reasonable steps in protecting the public from future crimes of this defendant.

E.   *Avoiding Unwarranted Sentencing Disparities*

The Court has an obligation to ensure minimal sentence disparities among defendants with similar records that have been found guilty of similar conduct. As this Court is no doubt aware, it is not uncommon for defendants convicted of crimes related to child pornography to have little or no prior criminal history. It is also not uncommon for such defendants to have strong employment histories. However, the number of images and videos, Defendant's influence on his son, and the length of time that Defendant engaged in this illegal activity require a substantial prison term well beyond the mandatory minimum of 60 months.

F.   *Restitution*

"The Mandatory Restitution for Sexual Exploitation of Children Act, 18 U.S.C. § 2259, was enacted for the purpose of compensating the victims of offenses involving the sexual exploitation of children." *United States v. Evers*, 669

F.3d 645, 657 (6th Cir. 2012). The statute makes restitution mandatory for such crimes and "direct[s] the defendant to pay the victim ... the full amount of the victim's losses as determined by the court." 18 U.S.C. § 2259(b)(1), (b)(4). The term "victim" is defined by the Act as an "individual harmed as a result of a commission of a [Chapter 110 offense.]" 18 U.S.C. § 2259(c). The Act further defines "the full amount of the victim's losses" as "any costs incurred by the victim" for a variety of expenses, including psychiatric or psychological care, lost income, attorneys' fees, and "any other losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2259(b)(3)(A)(F). "An order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A." 18 U.S.C. § 2259(b)(2). The Court is required to issue a restitution order. 18 U.S.C. § 2259(b)(4). Neither the economic circumstances of the defendant, nor the fact that a victim is entitled to receive compensation from another source, allow a court to decline to issue a restitution order. 18 U.S.C. § 2259(b)(4)(B).

The statute requires that restitution must be ordered to compensate victims for the harms caused "as a result" of a defendant's offense. 18 U.S.C. § 2259(c); *Evers,* 669 F.3d at 657. In *United States v. Paroline*, the Supreme Court agreed with the Sixth Circuit and the majority of other circuits and held that "[r]estitution is therefore proper under §2259 only to the extent the defendant's offense

proximately caused a victim's losses." *United States v. Paroline,* 134 S. Ct. 1710, 1722 (2014); *United States v. Gamble*, 709 F.3d 541, 546-547 (6th Cir. 2013); *United States v. Evers*, 669 F.3d at 659; *United States v. Hargrove*, 714 F.3d 371, 373 (6th Cir. 2013); *United States v. Kearney*, 672 F.3d 81, 95-96 (1st Cir. 2012); *United States v. Aumais*, 656 F.3d 445, 455-58 (4th Cir. 2012); *United States v. Laraneta*, 700 F.3d 983, 989-990 (7th Cir. 2012); *United States v. Fast*, 709 F.3d 712, 720-722 (8th Cir. 2013); *United States v. Kennedy*, 643 F.3d 1251, 1260-1261 (9th Cir. 2011).

The government received restitution requests from two victims depicted in the images and videos of child pornography possessed by Defendant. The materials supporting their requests have been provided to the Court. The government submits that a restitution award of $8,000 for Cindy, and $23,500 for the victim of the Lighthouse series, is appropriate.

## IV.  CONCLUSION

For the past fifteen years, Defendant collected and distributed child pornography. Defendant used the Ares Peer to Peer (P2P) file-sharing network to trade and distribute child pornography to other like-minded users all over the world. Defendant left his child pornography collection open to his adult son, who found the material and began to download child pornography. For the reasons stated above, a 151-month sentence is the appropriate sentence for Defendant.

Respectfully submitted,

BARBARA L. McQUADE
UNITED STATES ATTORNEY

*/s Sara D. Woodward*
SARA D. WOODWARD
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone: 313-226-9180
E-Mail: sara.woodward@usdoj.gov

Dated:  December 31, 2015

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 31, 2015, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Mitchell Nelson.

I further certify that I emailed a copy of the foregoing document to Steve Ely, U.S. Probation Officer.

s/Sara D. Woodward
SARA D. WOODWARD
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9810
sara.woodward@usdoj.gov
