UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        Case No. 14-20814
                                        Honorable Victoria A. Roberts

STEVEN SMITH,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE [ECF No. 33]**

**I.    INTRODUCTION**

This matter is before the Court on Steven Smith's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). He asks the Court to grant him a compassionate release because his medical conditions make him particularly vulnerable to the COVID-19 pandemic.

The Court held a video hearing on the motion on August 26, 2020. Smith was present and consented to proceed via videoconference.

The Court **DENIES** Smith's motion [ECF No. 33].

**II.   BACKGROUND**

In August 2015, Smith pled guilty to distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2). A forensic review of Smith's family

computer revealed 1,158 images and 404 videos of child pornography, the bulk of which belonged to Smith. Smith's collection mainly depicted prepubescent children engaged in sex acts with adult males and sadomasochism. Smith admitted that he had been downloading child pornography for over 15 years. During that time, Smith influenced his now-adult son, who admitted to first viewing child pornography on Smith's computer about ten years earlier when he was a teenager. Smith's son pled guilty to receiving child pornography and was sentenced to 110 months in prison.

Smith was held accountable for possessing over 600 images of child pornography. His guidelines range was 151 to 188 months. In January 2016, the Court sentenced Smith to 130 months in prison and five years of supervised release. The Court recommended that the Bureau of Prisons ("BOP") place Smith in a residential sex offender treatment program. Smith has served 54 months of his sentence. His projected release date is May 10, 2025.

Smith is 58 years old with underlying medical conditions including obesity and Type 2 diabetes. He is serving his sentence at FCI Elkton in Ohio. Smith has no history of disciplinary incidents. He has not participated in a sex offender treatment program, but he is on the wait list. Under

"PATTERN" – a prisoner risk assessment tool used by the BOP – Smith was found to present a "minimum" risk of recidivism. Also, a psychological evaluation conducted before Smith pled guilty indicated that Smith "is likely a below average risk to re-offend." While on bond awaiting trial, Smith complied with all conditions of release.

Smith filed a *pro se* motion for compassionate release on May 14, 2020. The Court subsequently appointed Smith counsel, and his counsel filed a supplemental brief in support of compassionate release. Smith proposes returning home to live with his wife and 16-year-old son. The government opposes Smith's release.

### III. DISCUSSION

The compassionate release statute allows the Court to modify a defendant's term of imprisonment if: (1) he fully exhausts all administrative remedies; (2) he shows both "extraordinary and compelling reasons warrant such a reduction [or release]" and that the reduction or release is consistent with" the Sentencing Commission's policy statements; (3) he is not a danger to any other person or the community; and (4) the factors in 18 U.S.C. § 3553(a) support the reduction or release to the extent they are applicable. *See* 18 U.S.C. § 3582(c)(1)(A)(i); United States Sentencing

Guidelines Manual ("USSG") § 1B1.13 cmt. n.1; *United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *1 (E.D. Mich. May 15, 2020).

### A. Smith Exhausted Administrative Remedies

The Sixth Circuit recently held that exhaustion of administrative remedies is a "mandatory condition" before a defendant can file a motion for compassionate release. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). The Sixth Circuit found "[t]he seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk." *Id.* at 835-36.

Smith did not properly exhaust administrative remedies before filing his *pro se* motion in May 2020. Since then, however, Smith's counsel has requested his compassionate release from the BOP, and the BOP denied the request. Although Smith filed his motion before he properly exhausted administrative remedies, the Court will not require Smith to refile his motion. In email correspondence with defense counsel, counsel for the government also stated that the government will not insist that Smith refile his motion.

Smith satisfies the exhaustion requirement.

### B.     Extraordinary and Compelling Reasons Exist

Section 1B1.13 of the Sentencing Guidelines is the "applicable policy statement" with which the Court must comply when considering a request for compassionate release.  Section 1B1.13 explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g) and must fit within at least one of the following four categories of "extraordinary and compelling reasons": (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) other reasons as determined by the BOP. USSG § 1B1.13 cmt. n.1; *Austin*, 2020 WL 2507622, at *1.

Smith says extraordinary and compelling reasons exist for his release based on COVID-19, his age and medical conditions, and the heightened risk the pandemic poses to prisoners.  He also says Elkton has one of the worst Coronavirus outbreaks in the BOP.

The government acknowledges that Smith has medical conditions – including diabetes and obesity – that place him at a heightened risk should he contract COVID-19.  Based on this, it concedes that Smith establishes extraordinary and compelling reasons for compassionate release.

Moreover, the Court is aware that COVID-19 was particularly rampant and uncontrolled at FCI Elkton at one point.  In April and May 2020, nine

inmates died of COVID-19, and in total, over 900 of the nearly 2000 inmates housed at Elkton have tested positive for the virus. *See* BOP COVID-19 Cases, *at* https://www.bop.gov/coronavirus/ & BOP Press Release, *at* https://www.bop.gov/resources/news/pdfs/20200509_pres_rel_elk.pdf. However, it appears the BOP has put measures in place to successfully control the spread of the virus at Elkton. There have been no deaths at the facility since May 8, 2020. As of August 26, 2020, only three inmates have COVID-19.

Nevertheless, the Court acknowledges the heightened risk this pandemic places on prisoners.

Smith demonstrates extraordinary and compelling reasons for compassionate release exist under USSG § 1B1.13(1)(A) & cmt. n.1(A).

### C. Smith is a Danger to the Community

Although Smith establishes extraordinary and compelling reasons exist, he is ineligible for release under 18 U.S.C. § 3582(c)(1)(A) because he is a danger to the community, and because § 1B1.13(2) of the Sentencing Guidelines only permits compassionate release if "the defendant is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2); *Austin*, 2020 WL 2507622, at *1. An evaluation of dangerousness in this context requires a comprehensive view

of community safety – "a broader construction than the mere danger of physical violence." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989).

"[F]ederal courts have been disinclined to grant compassionate release to petitioners convicted of crimes involving child pornography, even for vulnerable petitioners during the COVID-19 pandemic, citing potential dangerousness." *Coleman v. United States*, 2020 WL 3039123, at *4 (E.D. Va. June 4, 2020) (denying motion for compassionate release because defendant's release plan did not adequately protect the public from the potential of a subsequent offense involving child pornography and because defendant had not participated in rehabilitative programming specific to his offense). Nevertheless, "while offense conduct may inform the Court's discretion in deciding a motion for compassionate release and determining the appropriate conditions of release, such a motion may not be denied simply because of the underlying offenses." *Id.*

Smith proposes returning to the same environment in which he committed his offense. Smith would live with his wife and teenage son. In their home, they currently have two desktop computers, a laptop, and two iPhones. In letters to the Court, Smith's wife and son say they will protect

each device and their internet connection with a password so Smith cannot gain access to the internet.

Smith says he does not present a danger to the community because he was assessed to present a minimum risk of recidivism and because his compliance with pretrial release conditions demonstrates he is able to comply with Court orders. The Court disagrees.

The Court finds that Smith's release plan does not adequately protect the community from a subsequent child pornography offense. When Smith was on pretrial release, the Probation Department was able to monitor him. But today – since Probation is not conducting home visits during COVID-19 – Probation would not be able to implement or monitor the internet and device restrictions contemplated by Smith's wife and son. Moreover, Smith downloaded child pornography for over 15 years before his arrest. His wife never prevented him from doing so. The minimum risk recidivism assessment under PATTERN did not account for Smith's release into the same environment in which he committed the offense.

Releasing Smith under these circumstances would present a danger to the community, especially considering that Smith has not completed a rehabilitative sex offender program and because the ease of access to electronic devices and his ability to hide his conduct from his wife for over

15 years would make it easy for him to reoffend. *See Coleman*, 2020 WL 3039123, at *4; *United States v. Mitchell*, 2020 WL 2770070, at *4 (E.D. Cal. May 28, 2020) (denying compassionate release because defendant failed to participate in any rehabilitative program and failed to provide a detailed plan to prevent reoffending); *United States v. Miezin*, 2020 WL 1985042, at *5 (N.D. Ohio Apr. 27, 2020) (denying motion for compassionate release of defendant convicted of receipt and distribution of child pornography because, "[i]n today's society with smartphones, tablets, laptops, smart TVs, and countless other devices, it would not be possible to place [defendant] in home confinement and eliminate his ability to engage in his prior criminal conduct"); *United States v. Hylander*, 2020 WL 1915950, at *3 (S.D. Fla. Apr. 20, 2020) (denying motion for compassionate release where defendant proposed being released to the same location he committed his child pornography offense).

Finally, Smith influenced his now-adult son to view child pornography when he was a teenager. A release to his home where his 16-year-old son resides opens the door to the same corrupting danger to his teenager.

### D. The § 3553(a) Sentencing Factors Weigh Against Release

The Court also denies Smith's motion because the applicable § 3553(a) factors weigh against his release. *See Austin*, 2020 WL 2507622,

9

at *1 (the Court must find that the 18 U.S.C. § 3553(a) factors weigh in favor of release before granting such relief).

Smith has only served 54 months of his 130-month, below-guidelines sentence. Given the nature of his crime, to release Smith with more than half of his sentence remaining and before he completed a sex offender treatment program would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public. *See* 18 U.S.C. § 3553(a).

Because of Smith's influence, his older son was convicted on a child pornography charge as well. The Court sentenced Smith's son to 110 months imprisonment in December 2015. Since Smith's son was detained pending trial, he has already served 70 months of his sentence, and even with good time credit, he still has over two more years that he will be in prison. Section 3553(a)(6) warns courts "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). This factor weighs against Smith's release, considering that Smith's conduct was more egregious than his son's, and his sentence was 20 months longer than his son's.

## IV.  CONCLUSION

Smith directs the Court to several cases, including *United States v. Grubbs*, No. 16-228, 2020 WL 3839619, at *2 (W.D. Wash. July 8, 2020); *United States v. Delateur*, No. 18-5364, 2020 WL 3989175, at *2 (W.D. Wash. July 1, 2020); and *United States v. Dillard*, No. 15-CR-00170, 2020 WL 2564638 (D. Idaho Apr. 27, 2020).

While those cases involve the compassionate release of defendants convicted on child pornography charges, none of them involved the unique circumstance that this case presents: the corrupting influence the defendant had on his older son, and the opportunity for him to do the same to his youngest son if the Court releases him.

For this reason and those set forth above, the Court **DENIES** Smith's motion for compassionate release [ECF No. 33].

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 26, 2020