UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

Case No. 14-cr-20814

v.

Hon. Victoria A. Roberts

STEVEN SMITH,

    Defendant.

_____/

**Response in Opposition to [53] Smith's Renewed Motion for Compassionate Release and [55] Supplemental Brief**

## Issues

I.    Should Smith's renewed motion for compassionate release be denied because, even considering his revised release plan, he continues to pose a danger to others and the community, *see* USSG § 1B1.13(2), and reducing his sentence would be improper considering the 18 U.S.C. § 3553(a) factors?

II.    Are the conditions at Smith's facility irrelevant to whether Smith would pose a danger to the community if released and whether reducing his sentence would be improper consider the § 3553(a) factors?

## Introduction

Steven Smith asks the Court to reconsider its decision denying his motion for compassionate release because he has made other living arrangements, he would be willing to undergo non-residential sex offender treatment, and his incarcerated son does not oppose his release. None of this, however, adequately addresses the Court's concerns about dangerousness. Nor does it tip any of the relevant sentencing factors in his favor.

The conditions at Smith's facility do not change this analysis, since there is no dispute that Smith has shown extraordinary and compelling circumstances. Those conditions have no bearing on whether releasing a prisoner would present a danger to the community or fail to fulfill the purposes of sentencing, which are the two grounds on which Smith's initial motion was denied. The Court should deny Smith's renewed motion for compassionate release.

## Background

An investigation revealed that Smith was sharing child pornography online using a peer-to-peer program. (PSR ¶¶ 9-10). That program was running on the family computer when agents searched

3

Smith's home. (PSR ¶ 11). A forensic review of the items seized revealed 1,158 images and 404 videos of child pornography, the bulk of which belonged to Smith. (PSR ¶ 16). Smith's collection mainly depicted prepubescent children—in some instances toddlers—engaged in sex acts with adult males and sadomasochism. (PSR ¶ 16). Smith admitted that he had been downloading child pornography for over 15 years. (PSR ¶ 15). Sadly, Smith influenced his adult son, who first viewed child pornography on Smith's computer about ten years earlier as a teenager. (PSR ¶ 12). Smith's son pleaded guilty to receiving child pornography and is still serving his 110-month sentence. (Case No. 14-cr-20815).

Smith pleaded guilty to distributing child pornography. (ECF No. 22, Plea Agreement). Although his guidelines range was 151 to 188 months in prison, the Court sentenced Smith to 130 months in prison and five years of supervised release. (ECF No. 30, Judgment). The Court recommended that the BOP place Smith in a residential sex offender treatment program. (*Id.*, PgID.131).

Smith's projected release date is May 10, 2025. He has served less than half his below-guidelines sentence and has not yet participated in sex offender treatment, which BOP offers toward the end of a sentence.

The Court denied Smith's initial motion for compassionate release on the merits. (ECF No. 51, PgID.615-625). The Court concluded—and the government does not contest—that Smith established extraordinary and compelling reasons for compassionate release based on his obesity and Type 2 diabetes, which places him at heightened risk from Covid-19. (*Id.*, PgID.618-620). Nonetheless, the Court properly denied Smith's motion because he poses a danger to the community under USSG § 1B1.13(2) and because the relevant § 3553(a) sentencing factors weigh against a reduction in sentence. (*Id.*, PgID.620-624).

In his renewed motion, Smith proposes a revised release plan along with information about available non-residential sex offender treatment, with the hope of addressing the Court's concerns regarding dangerousness. He also includes a letter from his incarcerated son, with the hope of addressing the Court's concerns regarding the sentencing disparity between father and son that would result if Smith were released. Finally, Smith discusses the conditions at his facility.

## Argument

**I. The Court should deny Smith's renewed motion for compassionate release.**

    **A. Smith remains ineligible for compassionate release based on dangerousness.**

Section 1B1.13(2) only permits release if a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Evaluating dangerousness under § 3142(g) requires a comprehensive view of community safety—"a broader construction than the mere danger of physical violence." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (per curiam).

"[F]ederal courts have been disinclined to grant compassionate release to petitioners convicted of crimes involving child pornography, even for vulnerable petitioners during the COVID-19 pandemic, citing potential dangerousness." *Coleman v. United States*, 2020 WL 3039123, at *4 (E.D. Va. June 4, 2020). And "given the ease with which child pornography is accessible in the modern world," releasing such offenders "is likely to require stringent and frequent monitoring," which creates a safety risk for the officers tasked with that responsibility during a health pandemic. *United States v. Sears*, 2020 WL 3250717, at

6

*3 (D.D.C. June 16, 2020); *see also United States v. Meizin*, 2020 WL 1985042, at *5 (N.D. Ohio Apr. 27, 2020) (denying compassionate release because of the easy access to electronic devices).

Here, the Court provided a multitude of reasons why Smith presented a danger to the community and was therefore ineligible for compassionate release. Without home visits, the probation department would not be able to implement or monitor the internet and device restrictions that his family proposed. (ECF No. 51, PgID.622). The Court also expressed concern about the length of Smith's criminal history—he downloaded child pornography for over 15 years, undetected by his family. (*Id.*). Although recognizing Smith's minimum PATTERN score, the Court concluded that Smith would still pose a danger if released. In particular, the Court noted that Smith proposed returning to the same home environment where he committed his offense, had not completed residential sex offender treatment, would have easy access to electronic devices, and is skilled in hiding his criminal conduct. (*Id.*, PgID.622-623). In addition, given that Smith influenced his now-adult son to view child pornography as a teenager,

the Court worried that allowing Smith to live with his 16-year-old son would risk "the same corrupting danger." (*Id.*, PgID.623).

Smith's revised release plan, in which he would live with his mother and sister instead of his wife and teenage son, somewhat addresses the Court's last concern regarding risk of corrupting influence. (ECF No. 53, PgID.635-636). But the proposal does little else to ensure that Smith will not reoffend and, consequently, does not alleviate the danger he poses to the community. His mother's home, although not the precise location where he committed the underlying offense, is nonetheless a residential environment with electronic devices and internet access. And if he was able to hide his criminal conduct from his wife for over 15 years, the government is concerned that he could conceal criminal conduct from other individuals like his mother.

Smith points out that the probation department is able to take some measures to supervise individuals during the pandemic, including through remote monitoring. (ECF No. 53, PgID.637). But this is not new information and does not address the Court's concern that in-home visits would be needed to protect the community in this case. In-home visits would be critical because Smith's release plan depends on family

members implementing safeguards to prevent his access to their electronic devices that are located in the home *without* the use of any remote monitoring. Smith does not propose, for example, that the probation department remotely monitor his mother's laptop.

Smith also argues that the Court can require him to participate in non-residential sex offender treatment if released. (ECF No. 53, PgID.636-637). This, too, is not new information to the Court. And the fact that Smith has looked into treatment options other than Shanle Psychological Services does not adequately reduce the danger he poses. At sentencing, the Court properly determined that the BOP's *residential* program was appropriate for Smith and should be completed *before* he returned to society. (ECF No. 30, PgID.131). This residential program is a "high intensity program designed for high-risk sexual offenders." BOP Program Statement 5324.010, at p. 14. Like the name suggests, inmates in the residential program "co-house" or live together. *Id*. This "permits the implementation of a modified therapeutic community," which has "been proven effective in reducing inmate recidivism." *Id*. This "therapeutic community in a prison setting stresses pro-social values and behaviors that are needed in the outside community." *Id*. The

9

program can take up to two years to complete. Smith is on the waitlist because he BOP prioritizes enrollment based on projected release date to maximize inmate participation. *Id.* at p. 16.

In sum, the bulk of the Court's reasoning on dangerousness remains intact. Smith downloaded child pornography for over 15 years undetected by his wife, influenced his now-adult son to view child pornography, has not participated in residential sex offender treatment, has served less than half his below-guidelines sentence, and proposes living with family members who have electronic devices, all in the midst of a pandemic during which the probation department is not conducting in-home visits. The Court should deny Smith's renewed motion because USSG § 1B1.13 precludes his release.

### B. The relevant sentencing factors still weigh against compassionate release.

Even if Smith were eligible for compassionate release, he would not automatically be entitled to a reduction in sentence. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. *See United States v. Murphy*, 2020 WL 2507619, at *6 (E.D. Mich. May 15, 2020) (denying compassionate release because "the 18 U.S.C. § 3553(a) sentencing

10

factors do not favor release"); *see also United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors).

Here, Smith's online distribution of child pornography for more than a decade is undeniably serious, the types of images he shared are especially disturbing, and his criminal behavior adversely influenced his own son. *See United States v. Sears*, 2020 WL 3250717, at *2 (D.C. Cir. June 16, 2020) ("[T]he possession and distribution of child pornography is an extremely serious crime because it involves trading depictions of the actual sexual assault of children, and the abuse that these child victims endure will remain available on the internet forever."). And although Smith contends that he is unlikely to recidivate, the Court already considered Smith's risk of recidivism when deciding to sentence him below the guidelines. *See United States v. Hull*, 2020 WL 2475639, at *4 (D. Conn. May 13, 2020).

Further, Smith is less than halfway through his below-guidelines sentence, has not yet served the mandatory minimum 60 months for his offense, and has not yet undergone residential treatment. With respect to child pornography offenders, courts have typically refused to release

11

inmates with a significant portion of their sentence remaining. *Compare Hull*, 2020 WL 2475639, at *3 (refusing to release an inmate who had "only served a little over half of his 60-month sentence" for receipt of child pornography) *and United States v. Riter*, 2020 WL 3428144, at *4 (S.D.N.Y. June 23, 2020) (refusing to release an inmate who had served roughly one third of his sentence for receipt, distribution, and possession of child pornography) *with United States v. Pippin*, 2020 WL 2602140, at *3 (W.D. Wash. May 20, 2020) (releasing inmate who had served 70 percent of his sentence for possession of child pornography) *and United States v. Feucht*, 2020 WL 2781600, at *4 (S.D. Fla. May 28, 2020) (releasing inmate who had served about 86 percent of his sentence for distributing child pornography). Courts also consider whether an inmate "has participated in rehabilitative programming specific to his offense of conviction." *Coleman*, 2020 WL 3039123, at *5.

Here, the Court properly determined that the relevant § 3553(a) factors counseled against Smith's release. "Given the nature of his crime, to release Smith with more than half of his sentence remaining and before he completed a sex offender treatment program would not reflect the seriousness of the offense, promote respect for the law,

12

provide just punishment, afford adequate deterrence, or protect the public." (ECF No. 51, PgID.624). The Court also reasoned that the need "to avoid unwarranted sentence disparities" weighed against Smith, since his own son, whom he influenced down a path of criminality, is still imprisoned and will remain behind bars for over two years, yet "Smith's conduct was more egregious than his son's, and his sentence was 20 months longer than his son's." (*Id.*).

Smith attempts to address this unwarranted disparity by offering a letter from his incarcerated son, who states that he does not oppose Smith's release. (ECF No. 53, PgID.640). But the son's opinion does nothing to remedy the concern. Congress instructed courts to consider "the need to avoid unwarranted sentence disparities among defendants," irrespective of how those defendants would feel about unwarranted sentence disparities. 18 U.S.C. § 3553(a)(6). And releasing Smith before serving the mandatory minimum sentence for his crime would result in a disparity from a national perspective as well.

Because the relevant sentencing factors are unchanged and still weigh against a reduction in sentence, the Court should deny Smith's renewed motion for compassionate release.

## II. The facility at which Smith is located does not change the outcome.

In denying Smith's initial motion for compassionate release, the Court acknowledged that "COVID-19 was particularly rampant and uncontrolled at FCI Elkton at one point," but it appeared, in more recent months, that "the BOP [had] put measures in place to successfully control the spread of the virus at Elkton." (ECF No. 51, PgID.619-620). Ultimately, though, the specific conditions at FCI Elkton were not needed to show extraordinary and compelling circumstances, which the Court found based on Smith's medical conditions. The Court denied relief based on Smith's dangerousness and the relevant sentencing factors.

Smith was recently transferred to FCI Fort Dix. (ECF No. 55, PgID.893-906). In his supplemental filing, Smith goes to great lengths to show that he remains vulnerable at FCI Fort Dix. This discussion, however, is effectively moot, since those conditions would relate only to whether Smith has established extraordinary and compelling circumstances for release, which the Court already concluded based on his medical conditions. The circumstances at Smith's facility have no bearing on whether Smith would pose a danger to the community if

14

released or whether reducing his sentence would be improper considering the relevant sentencing factors, which are the two bases on which the Court denied his initial motion.

## Conclusion

For these reasons, Smith's renewed motion for compassionate release should be denied.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

*s/ Jessica V. Currie*
Jessica V. Currie
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, MI  48226
(313) 226-9531
jessica.currie@usdoj.gov

Dated: November 10, 2020

**Certificate of Service**

I certify that on November 10, 2020, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Michigan using the ECF system, which will send notification of the filing to all users of record.

s/ Jessica V. Currie
Assistant U.S. Attorney
